UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

IN RE:     DANIEL AND KIMBERLY STOLTZ,          Case No. 07-22864

           Debtors.                              Chapter 13.

**ORDER SUSTAINING BANK OF NEW YORK TRUST COMPANY'S
OBJECTION TO CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN**

I.   **Factual Background**

The debtors filed their Chapter 13 plan on the day they filed their petition. Debtor's Chapter 13 plan, docket #2 (hereinafter "debtors' plan"). The form of the plan follows, for the most part, the model Chapter 13 plan for this district.[1]

Paragraph 3 of the debtors' plan reads in pertinent part:

> **Claims Generally. The amounts listed for claims in this Plan are based upon Debtor's best estimate and belief.** Nothing herein prohibits a creditor from filing a proof of claim in a different amount. Objections to claims may be filed before or after confirmation.

Debtors' plan at ¶ 3. This language is identical to the language in the district's model Chapter 13 plan.

Paragraph 7(B)(ii) of the debtors' plan indicates that the debtors have an arrearage claim of $16,500 secured by real property, which they intend to cure through the plan. They list the creditor as Homecomings Financial, and the

---

[1] It is not mandatory in this district that debtors use the model Chapter 13 plan.

1

property as their homestead.[2] The proof of claim for this property, filed approximately two-and-a-half months after the debtors filed their plan, lists the amount of the arrearage at $23,105.92.

Paragraph 10 of the debtors' plan states, "**Property of the Estate.** Property of the estate shall revest in Debtor upon discharge, conversion, dismissal or other order of the court." Debtor's plan, ¶ 10. This language also comes directly from the district's model Chapter 13 plan.

Creditor Bank of New York Trust Co. ("the creditor") objects to two parts of the debtors' plan. First, it objects to the amount of the mortgage arrearage listed in paragraph 7(b), noting that the correct amount of the arrearage is $23,105.92 and not the $16,500 listed. Second, it objects to the language indicating that the property of the estate will revest in the debtor "upon discharge, conversion, dismissal or other order of the court." The Court sustains both objections.

## II. Legal Analysis

   A. <u>The Language of the Debtors' Plan, While Taken From This District's Model Plan, Does Not Clearly Provide that the Amount of the Creditor's Claim Is To Be Controlled By The Proof of Claim.</u>

The creditor objects that the amount of its arrearage claim is $23,105.92, but the plan lists the arrearage at only $16,500. The debtors do not necessarily disagree with the amount listed in the creditor's proof of claim. Rather, the debtors argue that the language in paragraph 3 of the plan makes the creditor's objection

---

[2] The Bank of New York Trust Company is a successor.

2

Case 07-22864-pp    Doc 32    Filed 10/22/07    Page 2 of 15

unnecessary. The debtors argue that the language in paragraph 3 of the plan–language that the debtors adopted verbatim from this district's model Chapter 13 plan–clearly states that the claim amounts listed in the plan are estimates. The plan language makes clear that creditors are allowed to file proofs of claim in amounts different from the amounts listed in the plan, and that debtors may object to those proofs of claim before or after confirmation. The debtors argue that this language dictates that the *amount* of the claim, as opposed to the *treatment* of the claim, is controlled by the proof of claim, and not by the plan.

The debtors' argument raises an interesting variation in the plan-versus-claim problem created by the Bankruptcy Code. As this Court and others have noted, the Code raises a fundamental question regarding the binding effect of plans and claims.

1. *The Question Raised By the Code and the Rules*

    a. The Claim

Section 502(a) of the Code states that a claim is "deemed allowed" unless a party in interest objects to the claim. FED. R. BANKR.. P. 3002(a) states that "[a]n *unsecured creditor* or an *equity security holder* must file a proof of claim or interest for the claim or interest to be allowed," but is silent regarding holders of secured claims.[3] If filed, however, a proof of claim, under Bankruptcy Rule 3001(f), is *prima*

---

[3] At least one bankruptcy court has opined that, "as a practical matter, a secured creditor must file a claim to participate in and receive dividends or other distributions under a Chapter 13 plan." In re Strong, 203 B.R. 105, 112 (Bankr. N.D. Ill. 1996). This is because an "allowed" claim under § 502 is "[a] claim or

3

*facie* evidence of a claim's validity and value. In short, § 502 dictates that a claim is deemed allowed as long as no party objects to that claim. In this case, the secured creditor filed a proof of claim, did so timely and prior to confirmation, and objected to confirmation.

Section 502 does not articulate a time limit by which an interested party must object to a claim, nor does FED. R. BANKR. P. 3007, the rule governing objections to claims. Thus, a party in interest can object to a claim at any point until the moment a court either dismisses the case or orders that the discharge be entered. In this case, the debtors have not objected to the creditor's claim. Accordingly, the Code mandates that the creditor's claim is deemed allowed.

      b.    The Plan

Section 1327 states that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected, has accepted, or has rejected the plan." Thus, once a court confirms a plan, that confirmed plan binds both the debtor and the creditor.

FED. R. BANKR. P. 3015(b) allows a debtor to file his plan on the day he files his petition. If the debtor does not file the plan with the petition, Rule 3015(b) requires him to file his Chapter 13 plan no later than fifteen (15) days after he files the bankruptcy petition. In the case at bar, the debtors filed their Chapter 13 plan

---

interest, proof of which is filed under section 501 . . . ." 11 U.S.C. § 502. <u>Id.</u>

on the day they filed their petition.

Rule 3002(c), however, says that non-governmental creditors' claims are timely filed if they are filed no later than *90 days after the date first set for the meeting of creditors*–required, by Rule 2003, to take place between 20 and 50 days after the filing of the petition in a Chapter 13 proceeding. Thus, the rules require debtors to file plans explaining how they propose to treat creditors' claims some three to four-and-a-half months before the deadline for the creditors to file the proof of claim. Conversely, at the point in time at which debtors are required to file their plans, "it is unlikely . . . that creditors have even contemplated filing proofs of claims." In re Simmons, 765 F.2d 547, 552 (5th Cir. 1985). In this case, the debtors filed their plan almost three (3) months before the creditor filed its proof of claim.

Further, § 1324 of the Code requires that confirmation hearings on plans must be held no later than *45* days after the meeting of creditors. Reading this provision in conjunction with Rule 3002(c), one sees that confirmation hearings must take place forty-five days *before* the deadline for creditors to file their claims. As the Seventh Circuit has noted, there is no statute or rule requiring a creditor to file a proof of claim prior to confirmation. In re Hovis, 356 F.3d 820, 822 (7th Cir. 2004).

    c.    The Problem

This timing issue, and the fact that there is no time limit by which parties must object to claims, creates the problem with which bankruptcy courts, trustees

5

and practitioners struggle. The creditor files a proof of claim to which no one objects, and under § 502 it is deemed allowed because no one objected to it. The debtor files a plan and no one objects, so the court confirms the plan and that plan becomes binding on the creditor. If the amount listed in the proof of claim–which is deemed allowed–is different from the amount listed in the confirmed plan–which is binding on the creditor–which amount constitutes the allowed, secured claim which the trustee must pay?

This Court recently answered that question, at least for cases before it, in In re Smith, No. 06-20127, 2007 WL 1544366 (Bankr. E.D. Wis. May 29, 2007). In Smith, the Court held that in

> the case where the creditor filed its proof of claim pre-confirmation, the debtor filed a plan which clearly laid out how it proposed to treat and value the creditor's claim, the creditor had notice of that treatment and the means by which to object to it, and the creditor did not object pre-confirmation . . . the confirmed plan controls.

Smith at *14.

2.   *The Conflict Exemplified in the Eastern District Model Plan*

It is likely that the Smith decision prompted the creditor's objection in the case at bar. The debtors in this case respond, however, that their plan is different from the plan in the Smith case. Unlike the Smith plan, the plan in the case at bar included the model Chapter 13 plan language about the amounts of claims in the plan being estimates, the right of creditors to file proofs of claim in different amounts, and the rights of debtors to object before or after confirmation. This

6

language, the debtors argue, should reassure Bank of New York Trust in this case that, regardless of the amount of the arrearage the debtors listed in their plan, Bank of New York's proof of claim controls as to the *amount* of the claim. The debtors argue that once this Court confirms their plan, that plan will control only as to the *treatment* of Bank of New York's claim.

The Court is not as certain as the debtors that the language in their plan–indeed, the language in this district's model Chapter 13 plan–provides the creditor with the comfort it seeks. It is true that paragraph 3 clearly informs creditors that the amounts the debtor lists in his plan are estimates. It is also true that the plan clearly informs creditors that they are free to file proofs of claim in amounts different from those stated in the plan. Finally, it is true that the plan clearly informs creditors that debtors may object to their claims before or after confirmation.

The Court does not, however, read these three notices as adding up to an assurance to creditors that the amounts they list on their proofs of claim, rather than the amounts the debtors list in their plans, will control when the trustee is trying to decide how to distribute the assets. First, there is language in the plan that precedes paragraph 3. The very first full paragraph in the debtors' plan–also lifted verbatim from this district's model Chapter 13 plan–warns creditors that their rights will be affected by the plan and that they should read it carefully and discuss it with an attorney. In particular, this paragraph states, "Confirmation of this Plan

7

by the Bankruptcy Court may modify your rights by providing for payments *of less than the full amount of your claim* and/or by setting the interest rate on your claim in the absence of an interest rate stated on a filed claim." Debtors' plan, first full paragraph, p. 1 (emphasis added). Regardless of what paragraph 3 says, this language tells creditors that they run the risk that a confirmed plan might impact not only the *treatment* of their claims, but the *amount* of their claims.

Further, the language in paragraph 3 does not direct a trustee to defer to the proof of claim. While it informs creditors that the amounts that the debtor has listed in the plan are "based upon Debtor's best estimate and belief," it does not go on to say, "and therefore, the amount listed in the proof of claim shall dictate how much the trustee shall distribute." While it informs creditors that they are free to file proofs of claim in amounts different from the amounts listed in the plan, it does not go on to say, "and if you do, Creditor, your proof of claim will control how much the trustee will distribute." And while it warns creditors that a debtor may file an objection to a proof of claim either before or after confirmation, this is nothing more than a statement of fact–§ 502 of the Code and FED. R. BANKR. P. 3007 do not prescribe a time limit within which debtors must object to claims.

If debtors intend their plans to provide that the trustee should distribute the amount listed in a creditor's proof of claim regardless of the amount the debtors list in the plan, they cannot rely on the model plan language. In order to accomplish this goal, debtors must use some other language that clearly directs the trustee to

distribute the amount listed in the proof of claim regardless of the amount reflected in the plan. The debtors in this case did not add such language.

Accordingly, the Court concludes that in order to provide the creditor with the protection it seeks, the debtors in this case must amend their plan–either to insert language indicating clearly that the proof of claim controls, or to put the amount contained in the proof of claim in the plan.

    B.    <u>The Language of the Debtors' Plan, While Taken From This District's Model Plan, Does Not Make Clear When the Debtors Intended for the Property of the Estate to Revest in the Debtors.</u>

The creditor also objects to the language in paragraph 10 of the debtors' plan, regarding when the property of the estate revests in the debtor. Again, the debtors have used, verbatim, the language from this district's model Chapter 13 plan. Again, however, the model plan language fails to achieve the desired clarity.

Section 541 of the Code provides that the estate is created when a bankruptcy case is "commenced"–that is, upon the filing of a petition. At that point in time, all of the property listed in § 541(a) becomes the property of the estate. There are, however, a number of ways that the property can "re-vest" in a debtor after the petition filing date. The following are some of the most common ways this revesting can occur.

    1.    *Events Which Can Cause Estate Property to Re-Vest in the Debtor*

        a.    Dismissal

Section 349(b)(3) of the Code provides that, "[u]nless the court, for cause,

orders otherwise, a dismissal of a case . . . revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." In other words, if the property was vested in the debtor before he filed his bankruptcy petition, then it will revest in the debtor upon dismissal, unless the court orders otherwise for cause.

      b.    Exemption

At the time a debtor files a bankruptcy petition, he can claim certain kinds of property exempt under § 522. Once those exemptions are allowed, either by the court or by the failure of any party to object, the exempt property revests in the debtor. *See* 11 U.S.C. § 522(l), In re Campbell, 313 B.R. 313, 321 (10th Cir. BAP, 2004).

      c.    Abandonment

Property that is abandoned under § 554 of the Code–whether by the trustee or by virtue of not having been administered at the time the case is closed–may revest in the debtor. *See* 11 U.S.C. § 554. *See also*, Morlan v. Universal Guar. Life Ins. Co., 298 F.3d 609, 617 (7th Cir. 2002), *cert. denied*, 537 U.S. 1160 (2003) ("The effect of a trustee's abandoning a claim is to revest the ownership of it in the debtor").

      d.    Confirmation

Finally, in the case of Chapter 13 bankruptcies, §1327(b) of the Code clearly states, "Except as otherwise provided in the plan or the order confirming the plan,

the confirmation of a plan vests all of the property of the estate in the debtor."

    e.  Discharge

All of these events–dismissal, claims of exemption, abandonment and confirmation–occur before discharge of the debtor's scheduled debts. Because § 1327(b) gives a debtor the option of having the plan provide for property of the estate to revest at some time other than at the time of confirmation, presumably a debtor could, if he had reason to do so, provide in a plan for the estate property to revest as late as at the time of discharge.

    2.  *The Language of The Eastern District's Model Plan*

This district's model plan language states that the property of the estate will revest in the debtor "upon discharge, conversion, dismissal or other order of the court." Some of this language is unnecessary, some is contradictory, some is redundant, and some is overly-inclusive.

The model plan language provides for revesting upon the occurrence of four events–discharge, conversion, dismissal or "other order of the court." As the language implicitly acknowledges, discharge is accomplished by an ". . . order of the court." Conversion of a case from Chapter 13 to Chapter 7 is accomplished by an ". . . order of the court." Dismissal–even voluntary dismissal–is accomplished by an ". . . order of the court." And of course, any "other order of the court" is an ". . . order of the court." The upshot of this combination of phrases is that the sentence is a long-winded way of saying that the property of the estate will re-vest in the debtor upon

any court order.

But in fact, the property of the estate does *not* revest in the debtor upon *any* court order. In particular, one of the court orders to which the model plan language refers specifically *does not* revest the property of the estate in the debtor. The property of the estate does not revest in the debtor when a case is converted from Chapter 13 to Chapter 7.

Section 348(f) of the Code states as follows:

> Except [when a debtor converts in bad faith], when a case under chapter 13 of this title is converted to a case under another chapter of this title–
>
> (A)   property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion . . . .

Thus, when a debtor converts a case from Chapter 13 to another chapter in good faith, all of the property that was in the estate on the petition filing date, and that remains in the debtor's possession on the conversion date, becomes the property of the bankruptcy estate under the new chapter–it *does not* revest in the debtor. And of course, when a debtor converts from Chapter 13 to another chapter in *bad* faith, the property of the estate "in the converted case shall consist of the property of the estate as of the date of conversion." In neither instance does the property revest in the debtor. So the inclusion in the model plan language of "conversion" as one of the events upon which property revests in the debtor is incorrect under the law.

12

The inclusion of "dismissal" as one of the events leading to revesting is not incorrect under the law, of course–§349(b)(3) provides for revesting upon dismissal. The language is, however, unnecessary. The model plan does not notify readers of other provisions of the Code–the fact that allowed exempt property revests in the debtor, for example, or the fact that certain abandoned property revests in the debtor. The Code provides for revesting upon dismissal, and that revesting will occur regardless of whether the plan says it will or not. Including this language in the plan does not inform readers of how the debtor has decided to exercise a particular election about the timing of revesting.

And then there is the event that the model plan language *does not* include. As discussed above, § 1327(b) provides for the property of the estate to revest in the debtor upon confirmation of the plan, unless the debtor provides otherwise in the plan or the court provides otherwise in the confirmation order. Thus, the debtor has the discretion either to have the property of the estate revest upon confirmation, or to delay that revesting until some other date or the occurrence of some other event. Of the various events which may lead to revesting of the property in the debtor, it seems that it would be most critical for readers of the plan to know about this one, for the very reason that the debtor *does* have discretion here in a way that he *does not* in the case of dismissal.

This is where the creditor's argument in this case truly finds purchase. If the plan were completely silent with regard to when property of the estate revested

13

with the debtor, perhaps the creditor safely could conclude that the debtor had elected to have the property revest at confirmation. That is, after all, the statutory default–if the debtor does not elect otherwise, §1327(b) requires the property of the estate to revest in the debtor at confirmation.

But what is a creditor to make of a plan that provides for revesting at three alternative points–discharge (which is an option a debtor could elect, but is by no means automatic), conversion (which is an incorrect statement of the law), *or* dismissal (which is a given under the Code)–and that makes no mention of whether the debtor elects to have the property revest at confirmation? Two of the events listed in the model plan language are mutually exclusive–if a case is dismissed, there will not be a discharge; f the debtor receives a discharge, there was no dismissal. So a statement that the property will revest at dismissal or discharge is the same as saying that the property will revest at discharge *unless* the case is dismissed. Is this how the creditor is to interpret this language? Or is the creditor to assume that, because the plan *does not* mention revesting at confirmation, *does* mention revesting at conversion (which does not occur), *and* gives the mutually-exclusive alternatives of revesting at dismissal or discharge, that the statutory default comes into plan, and the property does revest at confirmation? There simply is no way to tell, from this language, when the debtor intended to have the property revest.

14

C.  Conclusion

Doubtless it is frustrating for the debtors in this case to have reproduced faithfully the language from the district's model plan, only to draw objections to that very language. And the Court understands that often it is no small matter for a debtor to modify or amend a Chapter 13 plan, particularly in light of the district's Local Rule 3015, which requires services of modified or amended plans on all creditors pre-confirmation. But the Court cannot find that the language to which the creditor objects serves the purpose of directing the trustee to distribute the amount of the creditor's claim that is stated in the proof or claim, nor can it find that the language regarding revesting makes it clear when the estate property will revest in the debtor.

WHEREFORE, the Court hereby SUSTAINS creditor Bank of New York's objections to confirmation of the debtors' Chapter 13 plan. The debtors have thirty (30) days from the date of today's order to submit an amended plan.

SO ORDERED this 22nd day of October, 2007.

_____
HON. PAMELA PEPPER
United States Bankruptcy Court